IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHRISTINA BULLARD,                  )
                                    )
                Plaintiff,          )
                                    )
v.                                  )    Case No. CIV-19-397-RAW-KEW
                                    )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )
                Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Christina Bullard (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R.  §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).#

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. Claimant graduated from high school with special education classes. Claimant has worked in the past as a janitor and cook/dishwasher. Claimant alleges an inability to work beginning

3

June 14, 2017 due to limitations resulting from depression, anxiety, and bipolar disorder.

## Procedural History

On June 29, 2017, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On October 11, 2018, Administrative Law Judge ("ALJ") J. Leland Bentley conducted an administrative hearing in McAlester, Oklahoma. On November 23, 2018, the ALJ issued an unfavorable decision. On June 5, 2019, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in failing to weigh the opinion of a consultative examiner.

## Consideration of the Opinion Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of elevated liver enzymes, asthma, hernia, and obesity. (Tr. 22). The ALJ concluded that Claimant retained the RFC to perform light work except that she should avoid concentrated exposure to dust, fumes, odors, and poorly ventilated areas. She was able to understand, remember, and apply simple and some complex instructions and concentrate and persist for extended periods in order to complete simple and some complex work tasks with routine supervision. She was able to respond appropriately to co-workers, supervisors, and the general public. She was also able to adapt to a routine work setting. (Tr. 24).

After consulting with a vocational expert, the ALJ concluded Claimant could not perform her past relevant work but could perform the representative jobs of cashier II, sales attendant, and rental clerk, all of which were found to exist in sufficient numbers in the regional economy. (Tr. 30). As a result, the ALJ found Claimant was not disabled from June 14, 2017 through the date of the decision. Id.

Claimant contends that the ALJ failed to weigh the opinion of the consultative examiner, Dr. Kathleen Ward. After conducting a

mental status examination on Claimant, Dr. Ward issued a report from the January 16, 2018 examination.  The specific findings in the report which Claimant contends should have been included as further limitations in the RFC are as follows:

> Ms. Bullard appears to be a reliable historian, and there is not significant evidence that this claimant may be incompetent to handle any funds awarded, though math skills do not appear strong.  She appears to be nervous in attempting to figure arithmetic tasks in her head and searches for a pen/paper.
>
> (Tr. 398).
>
> Asked to complete reverse Serial 7's, the claimant was not able to begin effectively. The claimant was able to complete serial 3's through 12 before she began counting intermittently by 2's.
>
> Id.

Claimant also directs this Court to her testimony at the administrative hearing wherein she testified that she was in special education classes in school for spelling, math, and English.  These classes were attended by her in the eleventh and twelfth grades.  (Tr. 41).

Both the ALJ and Claimant failed to recognize that because Claimant filed her claims after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c.  In the first instance, this Court must

determine under the revised regulations whether the evidence being considered constitutes a "medical opinion." Statements by a medical source which reflect judgments about a claimant's diagnosis and prognosis are not considered "medical opinions" because they do not necessarily provide perspective about the claimant's functional abilities and limitations. 20 C.F.R. §§ 404.1513(a)(2) and (3).[2]

The pertinent regulations now provide a quite different definition of a "medical opinion" in stating:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (For claims filed (see § 404.614) before March 27, 2017, see § 404.1527(a) for the definition of medical opinion.)
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out

---

[2] The regulations for cases filed before March 27, 2017 provide that statements from an acceptable medical source that reflect judgments about the nature and severity of a claimant's impairments, including the claimant's symptoms, diagnosis, and prognosis, were considered "medical opinions." 20 C.F.R. § 404.1527(a)(2).

instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)    Your   ability   to   perform   other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

The new regulations also define "other medical evidence" as

(3) Other  medical  evidence.  Other  medical evidence  is  evidence  from  a  medical  source that  is  not  objective  medical  evidence  or  a medical opinion, including judgments about the nature and severity of your impairments, your medical   history,   clinical   findings, diagnosis,   treatment   prescribed   with response, or prognosis. (For claims filed (see § 404.614) before March 27, 2017, other medical evidence does not include a diagnosis, prognosis,  or  a  statement  that  reflects  a judgment(s) about the nature and severity of your impairment(s)).

20 C.F.R. § 404.1513(a)(3).

Also, under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by

considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

9

In his decision, the ALJ summarized Dr. Ward's report as follows:

> On January 16, 2018, Kathleen Ward, Ph.D., performed a psychological Consultative Examination and mental status examination of the claimant. Dr. Ward found the claimant with logical and organized thought processes and normal content of thought. Her speech was normal, and she had no perceptual abnormalities. Her mood was 8/10, with 10 being the best. She was oriented x3. She had minor deficits in social judgment and problem solving. Her intellectual abilities were estimated to be within lower ranges.
>
> (Tr. 27).

This Court agrees with Defendant's assessment of Dr. Ward's statements in her report identified by Claimant. The statement concerning Claimant's math skills does not constitute a "medical opinion" under the revised regulations as the statement does not explain what Claimant could still do despite her impairments or how the claimed deficit impacts her ability to perform the mental demands of work activities. 20 C.F.R. § 404.1513(a)(2)(ii). As a result, the ALJ was not obligated to consider the factors in evaluating the evidence under 20 C.F.R. §§ 404.1520c(b) and 416.920c(b).

Claimant contends in her reply brief that even if the statements on her mathematical deficiencies in Dr. Ward's report do not constitute a "medical opinion", the ALJ was still obligated

to consider the evidence of this restriction in the RFC. There is no indication that the ALJ failed to consider the mathematic limitation in considering Dr. Ward's report. An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

Moreover, the record indicates Claimant graduated from high school and attended nursing school. (Tr. 212). Additionally, in the Function Reports dated September 11, 2017 and April 9, 2018, Claimant indicated that she could pay bills, count change, handle a savings account, and use a checkbook and money orders. (Tr. 181, 243). One of the representative jobs identified by the vocational expert was that of sales attendant which requires a math level of one. A level one math skill requires the ability to "[a]dd and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." App. C - Components of The Definition Trailer, 1991 WL 688702. Evidence exists in the record to indicate that Claimant could perform these rudimentary math skills in order to engage in

11

the skills required for the sales attendant position.  This single job is sufficient to satisfy the requirements under step five. *See* <u>Nunn v. Apfel</u>, 149 F.3d 1191, 1998 WL 321189, *2 (10th Cir. 1998)(Even assuming that claimant's objections to some of the jobs identified by the vocational expert are well taken, if claimant can perform some of the jobs identified, the ALJ can rely on those jobs to find claimant not disabled).  As a result, the ALJ was under no obligation to consider Dr. Ward's statements concerning the adequacy of Claimant's math skills.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.  The parties are given fourteen (14) days from the date of the service of this Report and Recommendation to file any objections with a supporting brief with the Clerk of the court.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE